IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 10-cv-01657-CMA

HELEN S. IRVING,

    Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,

    Defendant-Appellee.

---

**ORDER AFFIRMING  DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1380-83.  Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff was born in December of 1958.  (Administrative Record ("AR") at 89.) She has completed two years of college.  (AR at 119.)  She served in the army in a non-combat administrative position from 1976 until 1986.  (AR at 89.)  She had a store at a flea market from 1997 to 2000, where she worked twice a week for two hours per day. (AR at 115.)  She testified that she has not worked since 2000.[1]  (AR at 34.)

---

[1]  There is some discrepancy in the record on this point.  Although Plaintiff testified that she has not worked since 2000, Dr. Laura Moran, in a report dated January 19, 2007, recorded that Plaintiff said she "has been working in her family business which is a retail store approximately one day per week but finds even that hard to do."  (AR at 323.)  Similarly, a report by Dr. Yashoda Sagar, dated August 20, 2007, recorded that Plaintiff said she "helps her husband with his business 1 day a week."  (AR at 420.)

Plaintiff applied for disability insurance and supplemental security income benefits in June of 2006, alleging an onset disability date of June 15, 2000. (AR at 89-96.) Her claims were initially denied on January 27, 2007.[2] (AR at 62-67.) Plaintiff sought review and an Administrative Law Judge (ALJ) held a hearing on August 6, 2008. (AR at 29-56.)

At the hearing, Plaintiff testified that she could not work as of June 15, 2000 because of sitting, standing, bending, and lifting limitations caused by her back pain. (AR at 35-36.) She was most comfortable when lying down and, since 2000, she spent 50 to 80 percent of her waking hours lying down on the floor. (AR at 36-39.) She testified that she could sit for five to ten minutes when her back was aggravated, or "a little big longer" when her back pain was not flared up, stand for 15-20 minutes, walk for 20-30 minutes, and could not bend or squat. (AR at 45-56.)

In addition to her back problems, she testified that she suffered from migraine headaches at least twice a month (AR at 39-41), needed to use the bathroom five to six times daily for three or four days a month because of irritable bowel syndrome ("IBS") (AR at 41-42), and suffered from depression due to her pain. (AR at 42-43.)

James E. Hardway, a vocational expert ("VE") also testified at the hearing via telephone. The ALJ asked the VE whether work existed in the national economy for a hypothetical individual of Plaintiff's age, education, and vocational history, who could "lift and carry up to 20 pounds, . . . sit, stand and walk no more than 15 minutes at a time

---

[2] The initial denial of Plaintiff's disability insurance is not dated. (AR at 62-64.) The January 27, 2007 date comes from the initial denial of supplemental security income benefits. (AR at 65-67.)

each . . . stand a total of two hours during an eight-hour work day, . . . walk one hour during an eight-hour work day, . . . sit six hours during an eight-hour work day, and could occasionally bend, stoop and crouch."  (AR at 50-51.)

In response, the VE opined that such an individual would be able to work in an unskilled, sedentary capacity, as a pari-mutual ticket checker, charge account clerk, or food and beverage order clerk.  (AR at 51.)  The VE also opined that these jobs could be performed if the hypothetical individual had a "sit/stand option at will," but that no jobs could be performed if someone needed to lie down on the floor for half the day.  (AR at 53.)  When questioned by Plaintiff's attorney, the VE testified that employers of unskilled workers do not "give any latitude" to employees as to the length of breaks from work and allow for no more than one absence every month.  (AR at 53-54.)

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a).  Pursuant to that sequential evaluation process, the ALJ issued a decision on August 25, 2008, finding that Plaintiff was not disabled.  (AR at 16-26.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar disc disease status-post L4-5 laminectomy, migraine headaches, and IBS.  (AR at 19-20.)  At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "lift and carry 20 pounds occasionally and 10 pounds frequently.  She could sit, stand and walk for 15 minutes at a time each, for 6 hours of total sitting, 2 hours of total standing and 1 hour total walking in an 8-hour day.  The claimant could occasionally bend, stoop, and crouch, and is otherwise able to engage in work activities without further restriction."  (AR at 21-24.)  Although Plaintiff had no past

relevant work experience, the ALJ found that there were jobs that existed in significant numbers in the national economy that she could perform given her age, education, and work experience. Therefore, Plaintiff had not been under a disability, as defined by the Social Security Act, from her disability date, June 15, 2000, through the date of decision. (AR at 25.)

The Appeals Council denied Plaintiff's request for review on July 7, 2010. (AR 1-8.) On July 13, 2010, Plaintiff filed this civil action, seeking judicial review of the denial of Social Security benefits. (Doc. # 1.) The Social Security Administrative Record was filed with the Court on September 17, 2010. (Doc. # 8.) On November 8, 2010, Plaintiff filed her Opening Brief. (Doc. # 12.) Defendant, the Commissioner of Social Security, responded on December 28, 2010, and Plaintiff replied on January 14, 2011. (Doc. ## 15, 18.)

In this appeal, Plaintiff claims that the ALJ failed to properly evaluate the medical evidence, that both the ALJ and the Appeals Council failed to properly assess her Department of Veteran Affairs' ("VA") disability ratings,[3] and that the Appeals Council failed to consider new evidence.

## I. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal

---

[3] The statement of issues and a section heading allege that the ALJ "failed to articulate specific valid reasons for disregarding the VA Rating Decision dated May 12, 2010." (Doc. # 12 at 1, 31.) The ALJ could not have regarded that Rating Decision because it came nearly two years after the ALJ issued his decision. The Court assumes that Plaintiff challenges the ALJ's alleged improper weighing of the VA Rating Decision dated December 3, 2007. (AR at 330-337.)

4

standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.*"  Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

"Evidence is not substantial if it is overwhelmed by other evidence in the record."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

## II.  ANALYSIS

### A.  WHETHER THE ALJ FAILED TO PROPERLY EVALUATE THE MEDICAL EVIDENCE

Plaintiff first contends that the ALJ failed to properly evaluate the medical evidence, and that the ALJ's decision is therefore not supported by substantial evidence.

#### 1.  Evidence Relating to Plaintiff's Depression

Plaintiff argues that the ALJ made numerous errors in assessing the medical evidence relating to Plaintiff's depression.  (Doc. # 12 at 25-27.)  However, it is unclear whether Plaintiff challenges the ALJ's determination at step two that her depression did not constitute a "severe impairment" or whether the perceived error lies in the ALJ's RFC assessment, which does not impose any limitations relating to Plaintiff's depression.  Regardless, the Court finds no error.

It is the claimant's burden to present evidence that she "has a medically severe impairment or combination of impairments."  *Warner v. Astrue*, 338 F. App'x 748, 750

5

(10th Cir. 2009). A "severe" impairment results in limitations that significantly affect the ability to perform basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Although step two requires only a *de minimis* showing of impairment, *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

In concluding that Plaintiff's depression was not a severe impairment the ALJ considered several medical opinions, Plaintiff's testimony, treatment notes, and an opinion by Michael Glugla, Plaintiff's treating nurse practitioner. The ALJ found that, "[t]here is really only minimal evidence of any depressive complaints or treatment in the records of this source." (AR at 20.)

Plaintiff first challenges the ALJ's determination that Plaintiff only had mild limitations on the grounds that it was inconsistent with the opinion of Robin Pedowitz, a staff psychiatrist at the VA, who examined Plaintiff on August 20, 2007 in connection with a VA Rating Decision. (AR at 423-427.) Although Dr. Pedowitz assessed Plaintiff with a GAF score of 55,[4] she also found that Plaintiff had intact mental status findings

---

[4] A GAF rating indicates an individual's overall level of functioning. A GAF score of 55 indicates "[m]oderate symptoms" or "moderate difficulty." Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32–34 (4th ed. 2000). GAF scores are merely one piece of evidence that is to be considered along with the rest of the record. *See Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir. 2007). As the ALJ noted, the record also contains GAF score assessments from 1996 that indicated mild functional deficits. (AR at 470, 478.)

and reported normal activities of daily living, stating that Plaintiff would have "occasional decrease in work efficiency . . . but generally there is satisfactory functioning with regard to routine behavior, self-care, and normal conversation." (AR at 427.)

Plaintiff claims that Dr. Pedowitz opined that "[Plaintiff] was found to have moderate to severe depression." (Doc. # 12 at 25.) This is simply untrue. The quoted language was not Dr. Pedowitz's own assessment, but merely her recording of what Plaintiff reported. Additionally, this "finding" of moderate to severe depression occurred in **May of 1990**. There was no equivalent finding of moderate to severe depression after 2000, the relevant period for this Social Security proceeding. Thus, Dr. Pedowitz did not opine that Plaintiff had "moderate to severe depression."

Plaintiff next contends that the ALJ placed undue weight on state agency medical opinions. Both Dr. Ziomek (AR 179-192) and Dr. Dyde (AR at 201-214) opined that Plaintiff did not have a medically determinable impairment. Both of these opinions are in "check the box" form. As such, Plaintiff correctly notes that such forms are generally considered weak evidence. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). Plaintiff argues that the ALJ erred by giving "controlling weight" to their opinions. However, there is no indication that the ALJ gave "controlling weight" to these opinions. (AR at 20.) Indeed, there is no indication that the ALJ placed **any** weight on these opinions; he merely stated that his conclusion that Plaintiff only had mild limitations was "consistent" with the state agency medical opinions. More importantly, the ALJ's conclusion was supported by substantial evidence, including the findings and

observations of Dr. Laura Moran (AR 323-326), Plaintiff's daily activities and abilities, and her testimony at the hearing.[5]

The issue to be addressed by this Court is whether Plaintiff's depression rose to the level of a severe impairment, *i.e.*, whether it significantly limited her ability to perform basic work activities. Although Plaintiff points to some evidence that her depression was more than "mild," she points to no evidence establishing that her depression was so severe as to significantly limit her ability to perform basic work activities. *See Warner*, 338 F. App'x at 751 (noting that plaintiff did not specifically challenge the ALJ's determination that her mental impairment significantly limited her ability to perform basic work activities). The Court finds no error in the ALJ's conclusion that Plaintiff's depression did not rise to the level of a severe impairment. Such a conclusion was not inconsistent with Dr. Pedowitz's opinion and was supported by substantial evidence in the record.[6]

    2.    <u>Evidence Relating to Plaintiff's Migraines and IBS</u>

Plaintiff contends that because the ALJ found that Plaintiff's migraine headaches and IBS constituted severe impairments (AR at 19), the ALJ erred when he failed to include any limitations for these impairments in his RFC assessment.

RFC assessments are the responsibility of the ALJ, 20 C.F.R. § 404.1546(c), and must be based on all of the relevant evidence in the case record. *See Winfrey*

---

[5] Plaintiff did not identify any way in which her depression affected her at the hearing. (AR at 42-43.)

[6] In addition to the opinion of Dr. Pedowitz, the ALJ also considered the opinion of Dr. Moran, two state agency doctors, and clinical records from treating sources describing Plaintiff's depression as "mild" and situational, secondary to her divorce. (AR at 265.)

*v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). In this case, the ALJ's opinion reveals that he considered all of Plaintiff's impairments, alone and in combination. (AR at 19-21.)

It appears to this Court that the ALJ gave Plaintiff the benefit of the doubt by including migraine headaches and IBS as severe impairments at step two. As noted above, step two requires only a *de minimis* showing. *See Langley*, 373 F.3d at 1123. At step four, however, the ALJ is responsible for assessing a claimant's RFC based on all of the record evidence. *See* SSR 96-8p, at *5. As part of this responsibility, the ALJ must assess, for example, the intensity, frequency, and overall functional limitations that flow from a claimant's condition, including severe and non-severe impairments. *See* 20 C.F.R. § 404.1529; *Southard v. Barnhart*, 72 F. App'x 781, 783 (10th Cir. 2003).

After determining that Plaintiff's migraine headaches and IBS constituted severe impairments, the ALJ properly considered both of these impairments in conducting his step four assessment. In section four of his Decision, the ALJ acknowledged "[Plaintiff's] testimony that she suffers severe incapacitating migraine headaches at least twice per month." However, the ALJ also found that "[t]reating source records do not reflect this level of severity or frequency," and "actually a treating source observed in April 2007 that the claimant's migraines were not even an issue at that time." (AR at 21.) The former reference is to Dr. Sarah Smith's notes that were taken in connection with the VA disability assessment. These notes, which Plaintiff cites as the basis for her argument that the ALJ should have included RFC limitations for her migraine headaches, stated that Plaintiff suffered from severe migraine headaches **only 5 to 7**

**times a year**.  (AR at 418) (emphasis added.)  The latter reference is to Mr. Michael Glugla's April 17, 2007 letter, in which he stated that Plaintiff's migraine headaches "[have] not been a problem at the present time."  (AR at 329.)

At the hearing, the VE testified that employers will generally allow no more than one absence per month.  (AR at 54.)  Given that substantial evidence supports the conclusion that Plaintiff's migraine headaches occur less frequently than once a month – the generally acceptable limit on employee absences – the ALJ did not err by failing to include any limitations for the migraine headaches.

Similarly, with respect to IBS, in section four, the ALJ stated that the "medical evidence in this case does not demonstrate that the claimant's [IBS] meets [the Listing 5.06 criteria for chronic ulcerative or granulomatous colitis.]"  The ALJ acknowledged Plaintiff's testimony in which she described her monthly episodes of diarrhea lasting for days at a time, but found that "these complaints are not reflected in the medical record."  (AR at 21.)  As the ALJ noted, "clinical treatment records show that the claimant generally has reported significant improvement in her symptoms with continued medication use."  (AR at 21) (referencing AR at 411) (Plaintiff stated that dicyclomine "helps her stomach considerably.")

In section five of his Decision explaining the reasons for his RFC assessment, the ALJ also observed that Dr. Moran made "no mention of headaches or frequent and severe symptoms of [IBS] which would significantly affect the claimant's ability to engage in sustained employment."  (AR at 23.)  Indeed, there is little to no evidence in the record to suggest these impairments would limit Plaintiff's ability to work beyond the limitations contained in the RFC.  An ALJ is not required to include limitations for a

particular ailment even where the ailment constitutes a severe impairment. *See Boucher v. Astrue*, 371 F. App'x 917, 921 (10th Cir. 2010) (finding that the ALJ was not required to include limitations for claimant's hypothyroidism).

In this case, it is clear that the ALJ considered both Plaintiff's migraine headaches and her IBS during his step four assessments. Based on the lack of objective medical evidence in the record, the Court finds that ALJ did not err by not including RFC limitations for Plaintiff's migraine headaches and IBS, despite concluding that they were severe impairments.

To the extent that the ALJ did not reiterate, in the RFC portion of his order, his conclusions regarding Plaintiff's migraine headaches and IBS, any such error is harmless given that the ALJ had previously discussed, and supported by substantial evidence, his determination that the migraine headaches and IBS did not affect Plaintiff's ability to perform sustained work activities. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (applying harmless error analysis in Social Security case).

    3.    <u>Evidence Relating to Plaintiff's Back Condition</u>

The medical evidence established a longstanding history of Plaintiff's low back problems stemming from a military service-related injury in the late 1970s. This impairment was the basis for the limitations expressed in the RFC. In arriving at the RFC assessment, the ALJ considered:

> the claimant's subjective complaints and the history she provided to doctors, as well as any written information she provided to the Social Security Administration. In addition, medical signs and findings and the opinions of the claimant's treating and examining sources have been examined.

(AR at 24.) As previously noted, the RFC assessment contained the following limitations:

> claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand and walk for 15 minutes at a time each, for 6 hours of total sitting, 2 hours total standing and 1 hour total walking in an 8-hour day. The claimant could occasionally bend, stoop, and crouch, and is otherwise able to engage in work activities without further restriction.

(AR at 21-22.) Plaintiff challenges the ALJ's determination that she could occasionally bend, stoop, and crouch.[7]

An RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing medical facts and nonmedical evidence. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-9p, at *7. Although the ALJ may not have specifically referenced the words "bending, stooping, and crouching" in his detailed assessment of the Plaintiff's physical limitations, the ALJ discussed Plaintiff's medical records in detail. Such records consistently showed normal findings on physical examination, including no atrophy, normal ranges of motion throughout, a normal gait, the ability to squat and rise and get up from a chair and table without assistance, normal strength, and no tenderness to palpation in the lumbar spine (AR at 324-25, 417-18, 421-22.)

---

[7] Plaintiff also challenges the limitation that she could sit, stand and walk for 15 minutes at a time as inconsistent with Dr. Moran's opinion that Plaintiff "should be allowed to get up to stretch whenever needed." (AR at 326.) The ALJ was not required to adopt verbatim Dr. Moran's statement. As noted by the ALJ, Dr. Moran also recorded that Plaintiff said she could sit for up to 15 minutes at a time (AR at 323), and Plaintiff testified at the hearing that she could drive for up to 20 minutes at a time. (AR at 35.) Thus, the Court finds no error in this limitation.

In support of his RFC assessment, the ALJ assigned the "greatest weight" to Dr. Moran's medical opinion. (AR at 24.) Dr. Moran opined that Plaintiff:

> is able to stand for 2 hours and walk for 1 hour . . . she could alternate these activities with sitting but . . . she should be allowed to get up to stretch whenever needed and [Plaintiff] says that she can only sit for about 15 minutes at a time. Most of her time should be spend either standing or walking. She could do the combination of these activities 8 hours per day. **She was able to bend on a one time basis here. I do not think that she could do it repetitively.** She is able to squat. She could be able to lift and carry about 20 pounds as more would probably exacerbate her back pain. She is able to hear, speak and travel independently, do all daily self care activities and repetitive motions with her hands.

(AR at 326) (emphasis added.) Plaintiff alleges that the ALJ ignored the aspect of Dr. Moran's opinion concerning Plaintiff's ability to bend. See *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) ("The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability."). The Court finds that the ALJ did not improperly "pick and choose" aspects of Dr. Moran's opinion to believe. Dr. Moran's statement that Plaintiff "was able to bend on a one time basis here" does not indicate that Plaintiff could only bend once. Nor is Dr. Moran's statement "I do not think that she could do it repetitively" inconsistent with the ALJ's determination that Plaintiff could bend occasionally. The word "repetitively" is not a term of art. "Occasionally" means "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). A statement that Plaintiff could not bend repetitively does not necessarily mean that she could not bend "occasionally," as that term is defined.

In addition to Dr. Moran's opinion, the ALJ also noted that Dr. Greene's treatment records, from 2002 to 2006, showed intermittent complaints of low back and lower extremity pain, but that Plaintiff actually reported improved symptoms with increased rather than decreased physical functioning. In fact, she was so improved that she was taking salsa dance lessons in June of 2005, was performing all necessary house chores, and underwent physical therapy treatment in 2006 that she reported improved her pain symptoms in 2007. (AR at 22-23, 259-62.) The ALJ also considered an opinion from VA examiner, Dr. Yashoda Sagar, that found similar limitations as Dr. Moran (AR at 421), and the 2007 VA Rating Decision that concluded Plaintiff would be able to perform "sedentary work." (AR at 336.)

The Tenth Circuit instructs that an ALJ is obligated to base his RFC findings on record evidence. *See Fleetwood v. Barnhart* 211 F. App'x 736, 740-41 (10th Cir. 2007). The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* (quoting SSR 96-8p). The medical record in this case contained sufficient support for the ALJ's RFC limitation that Plaintiff could occasionally bend, stoop, and crouch.

    4.    <u>Whether the ALJ Improperly Rejected the Opinion of Mr. Glugla</u>

Plaintiff generally alleges that the ALJ improperly rejected the opinion of Mr. Glugla. Mr. Glugla opined that Plaintiffs "depression and low back pain has interfered with her ability to maintain any gainful employment." (AR at 329.) However, as the ALJ noted, Mr. Glugla "offered no specific functional restrictions that would substantiate such a conclusion." (AR at 24.)

14

The ALJ committed no error with respect to his weighing of Mr. Glugla's opinion. First, the ALJ correctly noted that opinions by nurse practitioners are not accepted medical source opinions entitled to weight.  *See* 20 C.F.R. § 404.1513(d) (Commissioner "**may** also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.")  In addition, the ALJ adequately explained his reasons for rejecting Mr. Glugla's opinion.  The ALJ stated that he found Mr. Glugla's opinion to be "unreasoned, unsupported by the evidence, and provid[ing] nothing more than a conclusory opinion . . .."  (AR at 22.)  Thus, the weight given to Mr. Glugla's opinion and the reasons for rejecting his opinions are clear from the ALJ's decision.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (the ALJ's decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to [medical opinions] and the reasons for that weight.")

**B.    WHETHER THE ALJ PROPERLY CONSIDERED THE VA's 2007 RATING DECISION**

 "Although another agency's determination of disability is not binding on the Social Security Administration, it is evidence that the ALJ must consider and explain why he did not find it persuasive."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) (internal citation omitted).  Plaintiff contends that the ALJ failed to give weight to the VA disability ratings and failed to articulate specific valid reasons for disregarding the August 20, 2007 VA Rating Decision.  (AR 330-337).  The Court finds no error.

In this case, the ALJ did not disregard or reject the Rating Decision.  (AR at 24.) Instead, the ALJ acknowledged the report, noting that the VA examination was found to have a 30% service-connected disability for depression, a 10% service-related disability

15

for headaches, and a 20% service-related disability for her back impairment. However, as the ALJ discussed, the VA's findings were based on its own rules and not binding on the Social Security Administration. *See* 20 C.F.R. § 404.1504 ("a determination made by another agency that you are disabled . . . is not binding on us."); *Breneiser v. Astrue*, 231 F. App'x 840, 844-45 (10th Cir. 2007). Thus, the ALJ was not required to adopt any conclusions from the VA Rating Decision. In addition, the 2007 VA Rating Decision determined that Plaintiff was "capable of gainful employment." (AR at 337.) Thus, the ALJ's decision was actually supported by the VA Rating Decision. *Cf. Breneiser*, 231 F. App'x at 844-45 (finding no error where ALJ found the claimant was not disabled despite a VA Rating decision assessing claimant with 100% overall unemployability).

**C.    WHETHER THE APPEALS COUNCIL ERRED IN FAILING TO CONSIDER NEW EVIDENCE**

Additional evidence is considered by the Appeals Council only if it is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.970(b)). "Whether [evidence] qualifies as new, material and chronologically relevant is a question of law . . .." *Id.* (internal quotation omitted). Evidence is new if it is not duplicative or cumulative. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). Evidence is material if "the Secretary's decision might reasonably have been different had the new evidence been before him when his decision was rendered." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (internal quotations and citations omitted). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Chambers*, 389 F.3d at 1142. "If the evidence does

qualify and the Appeals Council considered it in connection with the claimant's request for administrative review, it becomes part of the record in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Id.*

The Appeals Council stated that it considered some of the evidence. With respect to the additional evidence that pre-dated the ALJ's decision, (AR 516-32, 535-48), the Appeals Council determined that "this information does not provide a basis for changing the Administrative Law Judge's decision. The Court has reviewed that information and agrees that the evidence was not material.

With respect to the evidence that post-dated the ALJ's decision, the Appeals Council stated that it "looked at new evidence [submitted by Plaintiff] . . . The [ALJ] decided [Plaintiff's] case through August 25, 2008. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled on or before August 25, 2008 . . .."  (AR at 2.)

When the Appeals Council states that it considered new evidence – as it did here – the Appeals Council is not also required to expressly analyze the evidence. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006). Nevertheless, Plaintiff first contends that the Appeals Council "was not clear in its' reasons for rejecting the evidence." (Doc. # 12 at 37.) In this case, the Appeals Council did set forth a clear reason for rejecting the evidence – it was not chronologically relevant. (AR at 2.) Although Plaintiff argues that the Appeals Council must consider evidence submitted after the hearing date if the evidence is "new and material," this argument ignores the requirement that the Appeals Council shall only consider additional evidence "where it

17

relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b).

The principal piece of evidence that Plaintiff claims the Appeals Council should have considered is a VA Rating Decision dated May 12, 2010, which found that Plaintiff "would be unable to secure or follow a substantially gainful occupation as a result of [her] service connected disabilities." (AR at 172-175.) Although the 2010 VA Rating Decision might be material (and is certainly new), the finding of disability was based largely on an VA examination that occurred on March 19, 2009, a date after the ALJ's decision was issued. It is conceivable that the March 19, 2009 medical opinion may relate to a date on or before the ALJ's hearing decision but that opinion was not submitted to the Appeals Council and is not part of the administrative record. Neither the Appeals Council nor this Court can ascertain whether that medical opinion related to a date on or before the ALJ's decision. Although there is evidence in the record that Plaintiff's conditions were ongoing, there is nothing in the 2010 VA Rating Decision itself indicative of Plaintiff's conditions prior to August 25, 2008, the date of the ALJ's Decision. *See Wilson v. Apfel*, 215 F.3d 1338, 2007 WL 719457, at *2 (10th Cir. June 5, 2000) (noting that although new evidence indicated that condition was ongoing, there was nothing indicative of claimant's condition before the date of the ALJ's decision). Thus, the Appeals Council did not err by failing to consider the 2010 VA Rating Decision.

## III. **CONCLUSION**

Accordingly, it is ORDERED that:

(1)     The ALJ's denial of social security disability benefits is AFFIRMED; and

(2)     Each party shall pay its own costs and attorneys' fees.

DATED:  June   01  , 2011

                                     BY THE COURT:

                                     _____
                                     CHRISTINE M. ARGUELLO
                                     United States District Judge